IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| DANDRAE JONES, | ) |
| | ) |
| Movant, | ) |
| | ) |
| v. | ) No. 4:14-cv-00889-NKL |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**ORDER**

The Court denies Dandrae Jones' *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [Doc. 1]. Jones' motion for leave to conduct discovery, Doc. 22, and motion for evidentiary hearing, Doc. 26, are also denied.

**I.  Background**

    **A.  Procedure**

On February 11, 2010, a federal grand jury returned an indictment charging Jones and his alleged co-conspirators with conspiracy to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. On June 30, 2011, following a four day trial, a jury found Jones and his co-defendants guilty of the charged crime.

Jones' presentence investigation report ("PSR") was completed by the United States Probation Office and reflected a base offense level of 38, with enhancements for obstruction of justice and possession of a firearm, resulting in a total offense level of 42. The PSR placed Jones in criminal history category 3. The Sentencing Guidelines range

for this offense level was 360 months to life imprisonment. The Court adopted the PSR and its advisory Guidelines range and sentenced Jones to 360 months' imprisonment, entering judgment on February 22, 2012.

Jones timely filed a notice of appeal. The Eighth Circuit Court of Appeals affirmed Jones' conviction and sentence on January 17, 2013. The Supreme Court denied Jones' writ of certiorari on November 4, 2013.

B. **Factual Background**

The case against Jones arose out of a cocaine distribution conspiracy in Kansas City, Missouri. Investigation into the case lasted from 2004 to 2009. Thirty-three individuals were eventually charged in relation to the conspiracy. Five of these individuals were tried in a jury trial beginning on February 14, 2011 (the "Dunn trial"). *See* Case 4:09-cr-00188-BCW. Three more, including Jones, were tried in a separate jury trial beginning on June 27, 2011 (the "Jones trial"). *See* Case 4:10-cr-00045-GAF.

The government presented several of the same witnesses in these two trials, most notably Agent Mark King, Alejandro Corredor, and Terrence Harris. Agent King served as one of the primary Homeland Security investigators of the drug conspiracy. Corredor served as a primary liaison between the Mexican cartel supplying cocaine and a legion of cocaine distributors in Kansas City. Harris, Corredor's brother-in-law, was also intimately involved with the distribution ring.

Evidence was presented at the Jones trial that Jones was one of Corredor's cocaine distributors. The government presented evidence that on or around the time Corredor received his final 47 gram shipment of cocaine, Jones was at a residence out of which

Corredor distributed cocaine (the "92nd place residence"). It also presented evidence of Jones' name in a drug ledger showing that Corredor routinely provided Jones cocaine. Corredor, Special Agent King, and other co-conspirators testified about this and other evidence at the Jones trial and described Jones' intimate involvement in the distribution ring. Following four days of trial, the jury found Jones guilty of conspiracy to distribute five kilograms or more of cocaine. Case 4:10-cr-00045-GAF, Doc. 188, p. 1.

## II. Discussion

### A. Due Process Violation: Knowing Solicitation of Perjured Testimony

Jones contends that his due process rights were violated by the prosecutor knowingly soliciting perjured testimony at his trial that conflicted with evidence presented months earlier at the Dunn trial.

It is well established that the prosecution may not solicit false or perjured testimony or allow such testimony to go uncorrected. *Giglio v. United States*, 405 U.S. 150, 154 (1972); *U.S. v. Martin*, 59 F.3d 767, 770 (8th Cir. 1995). However, "[m]ere inconsistency between witnesses' testimony is not necessarily perjury, and not every contradiction is material. [A] challenge to evidence through another witness or prior inconsistent statements [is] insufficient to establish prosecutorial use of false testimony." *Id.* (citations and quotations omitted). In order to succeed on his claim, Jones must prove "(1) the prosecution used perjured testimony; (2) the prosecution knew or should have known of the perjury; and (3) there is a 'reasonable likelihood' that the perjured testimony could have affected the jury's judgment." *Id.* (citing *United States v. Nelson*, 970 F.2d 439, 443 (8th Cir. 1992)). Under this test, Jones must be able to do more than

3

point to inconsistencies between witnesses' testimony at prior trials and their testimony at his trial; he must be able to prove there is a "reasonable likelihood" that these inconsistencies infected the jury's verdict. The government is under no obligation to impeach or correct every potential collateral issue raised by a witness's testimony. *English v. United States*, 998 F.2d 609, 611 (8th Cir. 1993).

Jones argues that the prosecution knowingly solicited five pieces of perjured testimony: (1) the location of the final 47 kilogram cocaine shipment, (2) the mathematical breakdown of how the cocaine was distributed, (3) Corredor's testimony regarding the quantities and times of cocaine deliveries, (4) Corredor's testimony that Jones was his "right hand man," and (5) Harris' testimony that he purchased cocaine from Jones on three occasions. None of these alleged inconsistencies constitute violations of Jones' due process rights.

Jones first points to purported inconsistencies in the testimony regarding the location of the final delivery of 47 grams of cocaine. At trial, the government presented surveillance evidence of the 92nd place residence showing Jones entering the home around the time of the final cocaine shipment. Jones argues that the government used this evidence to argue that the final shipment was delivered to the 92nd place residence despite evidence to the contrary. Specifically, Corredor testified at the Dunn trial that the final shipment was delivered to Mr. Moore's residence. *Id.* at 52. Joel Guevara testified at the Dunn trial that the final shipment was delivered to Roy Murray's house. *Id.* at 56-57. AUSA Marquez told the Court during the Dunn trial that he believed that the shipment was actually delivered to Mr. Moore's home. *Id.*

4

While the government presented surveillance evidence of Jones at the 92nd place residence, the government did not argue at the Jones trial that the final cocaine shipment was delivered to the 92nd place residence. Regardless of the location of the delivery of the final shipment of cocaine, Jones' presence at the 92nd place residence was relevant because the residence was owned by individuals involved in the conspiracy and the government presented evidence that Jones acquired cocaine while at the 92nd place residence that day. The government's evidence that Jones was present at the 92nd place residence does not conflict with the evidence presented at the Dunn trial that the final delivery was made either to Moore's house or Murray's house.

Even if the government had attempted to mislead the jury to believe that the final delivery of cocaine was made to the 92nd place residence where Jones was present, Jones does not identify how any discrepancies in this testimony affected Jones' conviction.[1] The prosecution presented surveillance evidence of the 92nd place residence showing Jones entering the house. Evidence was presented that Jones acquired cocaine during this visit. Whether the cocaine was delivered to the same house where Jones acquired the cocaine is irrelevant to the central question of whether Jones received the cocaine to begin with. Therefore, there is insufficient evidence to conclude that there is a reasonable likelihood that any perjured testimony could have affected the jury's judgment. Jones is not entitled to relief for this claim.

---

[1] Jones also briefly raises an argument regarding discrepancies in testimony about whether the final cocaine delivery occurred in January or February. Jones does not identify how this discrepancy would effects his underlying conviction and therefore any discrepancy is not material to his petition.

5

Jones next argues that the prosecution submitted perjured evidence regarding the distribution of the cocaine among Jones and his associates. Corredor testified to different amounts of cocaine being distributed among the conspirators between the Dunn trial and the Jones trial. At the Jones trial, Corredor testified that Jones received twelve kilograms of cocaine from the final shipment. At the Dunn trial, however, Corredor did not testify about distributing cocaine to Jones and testified that after distributing cocaine to some of the other Dunn defendants, he had no cocaine left over. Based on these contradictions, Jones submits that it was improper for the prosecution to allege that Jones received any of the final shipment of cocaine. These contradictions are insufficient for the Court to conclude that the prosecution knowingly solicited perjured testimony at the Jones trial which had a material effect on the outcome of the proceeding. This case involved thirty-three defendants and was investigated over the course of five years. Given the number of individuals involved in this trafficking scheme, it is entirely possible that Corredor simply forgot to mention a cocaine distribution to Jones during the Dunn trial, which involved five separate defendants and to which Jones was not a party. The government had a significant amount of evidence indicating that Jones acquired substantial amounts of cocaine from Corredor; therefore, there is no reason the prosecution should have believed that Corredor was perjuring himself during the Jones trial.

Jones makes similar arguments regarding discrepancies in Corredor's testimony about how much cocaine was received from his various suppliers. Jones does not explain how any discrepancies in this testimony would bear on his own conviction. Furthermore, as discussed above, the duration of the investigation and prosecution of this case makes

6

mild variance in testimony understandable. These discrepancies do not implicate Jones' due process rights.

Next, Jones contends that Corredor's testimony in the Dunn trial that Gonzales was his "right hand man" contradicted Corredor's testimony in the Jones trial that Jones was his "right hand man." Jones has presented no evidence that whether Corredor was more reliant on Jones or Gonzales had an effect on the outcome of his trial.

Finally, Jones argues that the prosecution presented perjured testimony from Terrence Harris, who stated at Jones' trial that he purchased drugs from Jones on three occasions, but did not mention receiving drugs from Jones during the Dunn trial. *Id.* at 69-71. Harris' failure to mention purchasing drugs from Jones during the Dunn trial again does not make his statements in the Jones trial perjury. It is possible that Harris simply forgot to mention Jones during the Dunn trial, or the information was not directly solicited. Jones has presented no evidence that Harris' statement that he purchased drugs from Jones was a lie, that the prosecution should have known it was a lie, or that the statement had a material effect on the outcome of Jones' case.[2]

### B. Ineffective Assistance of Counsel

Jones argues that his counsel was ineffective for failing to adequately argue his case and failing to raise arguments to mitigate his sentence at the sentencing hearing.

To succeed on a claim of ineffective assistance, a movant must prove both that: (1) defense counsel's representation was deficient; and (2) the deficient performance

---

[2] One of Jones' co-defendants raised similar perjury arguments on appeal to the Eighth Circuit in 2013. *U.S. v. Jefferson*, 725 F.3d 829, 837-38 (8th Cir. 2013). The Eighth Circuit summarily concluded that the argument was without merit.

prejudiced the movant's case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *U.S. v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). Failure to prove "either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700.

To establish deficient performance, the movant must show that "the lawyer's performance was outside the range of professionally competent assistance." *Cox v. Norris*, 133 F.3d 565, 573 (8th Cir. 1997). On this issue, "[j]udicial scrutiny of counsel's performance must be highly deferential" and the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. A movant "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. To establish prejudice, the movant "must show that, but for counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different." *Cox*, 133 F.3d at 573. The Court must also refrain from using hindsight to analyze counsel's actions and "try to evaluate counsel's conduct by looking at the circumstances as they must have appeared to counsel at the time." *Rodela-Aguilar v. United States*, 596 F.3d 457, 461 (8th Cir. 2010) (quotation omitted).

Jones first complains that defense counsel failed to investigate and procure the entirety of the transcript and evidence utilized in the Dunn trial and subsequently failed to adequately cross examine the government's witnesses in relation to this evidence. Jones contends that as Agent King, Corredor, and Harris were the only witnesses who testified

against Jones, his attorney's failure to impeach them with the previously described inconsistent statements constituted ineffective assistance.

The inconsistencies identified by Jones do not rise to the level of "grossly inconsistent" statements that an attorney would be obligated to point out to a jury. *See Whitfield v. Bowersox*, 324 F.3d 1009, 1017-18 (8th Cir. 2003) (vacated in part on other grounds) ("The Eighth Circuit has found constitutionally deficient performance of trial counsel based on ineffective cross-examination where counsel allowed inadmissible devastating evidence before the jury or when counsel failed to cross-examine a witness who made grossly inconsistent prior statements."). None of the inconsistencies identified by Jones give rise to a reasonable probability that had the jury known of the inconsistencies, there would have been reasonable doubt as to Jones' guilt. *Id.* at 1018. Jones' attorney performed thorough cross examinations of all three witnesses, pointing out significant flaws and biases present in each witness's testimony. Given the presentation of these far more exculpatory facts, it is highly improbable that counsel pointing out the minor discrepancies identified by Jones would have swayed the jury's decision in favor of Jones.

Jones next argues that defense counsel was ineffective in failing to call Guevara as a witness in Jones' defense at trial. Jones contends that Guevara would have testified that the February 2009 cocaine shipment was delivered to Murray's house. A decision whether to call a witness "is a virtually unchallengeable decision of trial strategy." *U.S. v. Staples,* 410 F.3d 484, 488 (8th Cir. 2005). Furthermore, as discussed above, the location of the final shipment delivery is at best an ancillary issue to the question of

whether Jones was involved in the conspiracy to distribute cocaine. Jones suffered no prejudice by his attorney failing to call Guevara to testify.

Next, Jones contends that his attorney should have raised the claim of prosecutorial misconduct on direct appeal. As previously described, the government did not present improper, perjured testimony as argued by Jones. Therefore, Jones' attorney had no obligation to raise this argument.

Jones next points to two problems with government exhibits 200 and 249. First, he argues that his attorney erred in failing to object during trial to the government using government exhibit 249, a surveillance video, and exhibit 200, a drug ledger, without giving Jones notice of the government's intent to use the evidence. Both of these pieces of evidence were listed in the government's exhibit list filed on June 14, 2011. Case 4:10-cr-00045-GAF, Doc. 136. This gave Jones and his attorney at least thirteen days before trial to prepare to address the issues raised by this evidence. Contrary to Jones' allegations, his attorney's cross examination of Agent King and Corredor with respect to this evidence was not incoherent. Jones' attorney adequately cross examined these witnesses consistent with Jones' theory that he was not involved with the conspiracy at all. His attorney provided alternate justifications for Jones' presence at the 92nd place residence and raised bias issues with each witness. Jones had adequate notice of this evidence and a sufficient defense related to it.[3] *See Walker v. Lockhart,* 807 F.2d 136, 139 (8th Cir. 1986) ("presentation of evidence is a matter of trial strategy").

---

[3] Jones briefly contends that his attorney failed to present an adequate closing argument regarding the drug ledger because he failed to point out that the ledger was not offered as

10

Jones further argues that counsel was ineffective for failing to file Jencks Act motions in relation to these exhibits. "The Jencks Act requires that the prosecutor disclose any statement of a witness in the possession of the United States which relates to the subject testified to by the witness on direct examination." *United States v. Stroud*, 673 F.3d 854, 863 (8th Cir. 2012). A "statement" is defined as "(1) a written statement made by said witness and signed or otherwise adopted or approved by him; (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or (3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury." 18 U.S.C. § 3500(e). In order for a defendant's conviction to be overturned due to a Jencks Act violation, there must be bad faith on the part of the government and prejudice to the defendant. *U.S. v. Greatwalker*, 356 F.3d 908, 911 (8th Cir. 2004).

To justify his Jencks Act claim, Jones points to his attorney's cross examination of Agent King wherein his attorney asked Agent King if there was a report of the February 16, 2009 observations Agent King made at the 92nd place residence, including watching Jones enter the residence. Agent King stated: "There was a report as far as the surveillance there. At the time the surveillance was done, I did not know that was, I did

---

evidence against other defendants in the Dunn trial, even though they were mentioned in the ledger. It is not probable that the outcome of Jones' case would have been different had this argument been made. Prosecutors often present different evidence with respect to co-conspirators to address separate issues with each individual's involvement in the case. Jones' other arguments regarding additional arguments that could have been made about the content of the drug ledger are similarly unpersuasive.

11

not recognize him as Mr. Jones." Case 4:10-cr-00045-GAF, Doc. 216, p. 103-04. The government states that both the surveillance report and the video were turned over to defendant as a part of early discovery. The government further represents that Agent King made no statement regarding the specifics of his testimony about seeing Jones on the video. According to the government, Jones was already in possession of Agent King's statements and the surveillance video at the time of trial. As noted above, the exhibit list identified the surveillance video. It also identified the police report. There is no evidence that an additional statement exists and Defense counsel had no obligation to request an additional statement that never existed.

Jones further argues that with these statements, his attorney would have been in a position to move to have Agent King's statements stricken from the record due to the inconsistencies in his testimony.[4] As already described at length, any inconsistencies in Agent King's testimony do not rise to the level of perjury and Jones was not prejudiced by the jury being unaware of minor differences in the testimony between these two trials. Jones also reiterates his complaint that the government acted in bad faith in allowing Agent King to testify to inconsistent facts at trial and in allowing them to "transcribe post-hoc reports and proffer statements surrounding [these exhibits] . . . since the government knew, from it's [*sic*] presentation of evidence at the Dunn et al. trial, that the 47 kilos of cocaine was never delivered to the 92nd place residence." [Doc. 9, p. 45]. Jones has provided no reason for the Court to believe that any report was prepared post-

---

[4] Jones originally argued that Corredor also made statements that his attorney should have requested under the Jencks Act. Jones abandoned his claims regarding Corredor in his reply brief. [Doc. 21, p. 33].

12

hoc or with the intent to alter the evidence in the case. Defense counsel was not ineffective in failing to request a continuance to further investigate the drug ledger and surveillance tape or in failing to make a Jencks Act motion to obtain any additional statement regarding the surveillance tape.

Next, Jones argues that his attorney failed to properly argue factors bearing on his sentencing. He states that his attorney failed to object to the inaccurate drug calculation in the PSR and the firearm enhancement, and failed to argue mitigating sentencing factors. Jones' contention with respect to the PSR drug calculation is unpersuasive, as his attorney argued that the calculation was improper during Jones' sentencing hearing. Case 4:10-cr-00045-GAF, Doc. 265, p. 2-3. The Court again rejects Jones' rehashed arguments regarding inconsistent testimony between his trial and the Dunn trial. AUSA Marquez's subsequent statement before the Eighth Circuit during Dunn's appeal that he did not believe Corredor knew how much cocaine he was getting is also irrelevant to the validity of Jones' conviction based on the evidence presented at the Jones trial.

Jones next contends that his attorney was ineffective for failing to object to the firearm enhancement and failing to raise the issue on direct appeal. The Sentencing Guidelines provide for a two level enhancement if the defendant possessed a dangerous weapon. Federal Sentencing Guidelines § 2D1.1(b)(1). "To support such an enhancement, the government must prove by a preponderance of the evidence that such a weapon was present and that it was not clearly improbable that it had some nexus to the charged offense." *U.S. v. Brown*, 148 F.3d 1003, 1008 (8th Cir. 1998).

Jones argues that he did not possess a firearm in relation to any of the drugs considered in his sentencing. The PSR makes clear that despite Jones' contentions, he consistently possessed firearms in conjunction with his distribution of cocaine and other drugs. Case 4:10-cr-00045-GAF, Doc. 246. While the drugs discovered in conjunction with the firearms were not counted multiple times for the purposes of determining Jones' sentence and the applicable Sentencing Guidelines range, this does not insulate the weapons discovered with the drugs from being considered in determining Jones' sentencing enhancements. Moreover, even if Jones' sentence had not been enhanced for his possession of firearms in conjunction with his crime, the Sentencing Guidelines still would have produced a range of 360 months to life imprisonment for his offense level (hypothetically reduced to 40 from 42).[5] Therefore, Jones cannot demonstrate prejudice and his attorney's failure to object to the firearm enhancement or raise it on appeal does not amount to ineffective assistance of counsel.

Finally, Jones argues that his attorney was ineffective in failing to argue mitigating sentencing factors and failing to argue on appeal that his sentence was not reasonable. Specifically, he claims that his attorney failed to argue that the "nature and circumstances" of the offense and Jones' "history and characteristics" warranted a sentence below the guidelines' range. Jones' arguments that his sentence is unjust as a

---

[5] Jones contends that his offense level would have been reduced from 36 to 34 (criminal history category III), presumably premised on his contention that he should have been sentenced consistent with having possessed less than 15 to 50 kilograms of cocaine (offense level 34, presumably enhanced to 36 due to his enhancement for obstruction of justice), rather than 150 or more kilograms of cocaine (offense level 38). As the Court has already rejected this argument, it concludes that the hypothetical elimination of the firearm enhancement would have reduced his offense level from 42 to 40.

result of the witnesses' inconsistent statements and lack of evidence against him is unpersuasive, as his attorney did highlight the lack of physical evidence and lack of evidence relating to the drug quantity during the sentencing hearing.[6] Furthermore, the scope of Jones' criminal history was discussed in the PSR, which the Court had access to in determining Jones' sentence. It is highly unlikely that the Court would have changed its sentencing decision due to defense counsel reiterating Jones' criminal history, particularly given the Court's decision to impose a sentence consistent with the sentences given to Jones' co-conspirators. Case 4:10-cr-00045-GAF, Doc. 265, p. 9-10.

Jones' claim of ineffective assistance of counsel fails.

### C. Motion for Leave to Conduct Discovery

Following the submission of his habeas corpus motion, Jones filed a motion for leave to conduct discovery related to his prosecutorial misconduct claims. Jones has requested five sets of documents and answers to interrogatories.

"Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts permits a petitioner 'to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.'" *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004). This rule does not sanction fishing expeditions for evidence to support a petitioner's claims. *Id.* Jones' arguments regarding

---

[6] Jones argues that these objections amount to no more than "bare denials" of the facts in the PSR. The record reflects that defense counsel both filed objections to the PSR and spoke at some length about the lack of evidence regarding Jones selling cocaine. Case 4:10-cr-00045-GAF, Doc. 265, p. 4-5.

15

the necessity of discovery are entirely speculative. Furthermore, as discussed above, Jones' arguments regarding the deficiencies in his trial and representation are without merit. Therefore, allowing Jones to accumulate evidence to bolster these theories would be fruitless.

First, Jones requests documents describing proffer statements related to Corredor's drug dealing relationship with him, documents related to any proffer statements made by Joel Guevara, and a digital copy of surveillance evidence presented against Jones at trial and any written reports related to the surveillance evidence. Jones contends that this evidence will prove that the government knowingly presented perjured testimony and that his attorney was ineffective for failing to point out these perjured statements. As discussed above, this evidence was given to Jones' counsel prior to trial. Furthermore, Jones would not be entitled to relief even if he acquired evidence of mild discrepancies between the discovery he seeks and the trial testimony.

Second, Jones seeks "any and all documents in reference to statements and proffer statements Corredor made about petitioner, Dunn, Charles and Westbrook being on the drug ledger, Govt. Ex. 200, as owing Corredor a drug debt." As discussed above, Jones' contention that he did not have notice about the ledger prior to it being raised at trial is without merit. Moreover, the government's decision to submit or omit the ledger as evidence in the Dunn trial is irrelevant to the use of the evidence at the Jones trial.

Third, Jones requests all government wiretap evidence utilized in the Dunn trial related to the conspiracy, documents referencing statements and proffer statements made by Harris about who he bought and sold drugs from and when he did it, and documents

16

referencing Corredor's acts of violence. The government notes that all wiretap evidence was turned over to the defense before trial, as was the evidence surrounding Harris and his testimony. Furthermore, the evidence Jones seeks in this request does not relate to a material element of the case that would alter Jones' conviction or sentencing if new evidence were uncovered. Jones had access to the discovery he now seeks at trial and his counsel had the opportunity to utilize that evidence at trial as necessitated by the testimony and counsel's trial strategy.

Fourth, Jones requests "Grand Jury testimony of all witnesses who participated in the hearing." Jones contends that this evidence would show that the government fabricated the surveillance evidence presented against Jones at trial. Jones has presented no evidence to support his fabrication theory. The remainder of Jones' arguments are also frivolous. None of the evidence he seeks would materially alter the evidence presented against him at trial or demonstrate that his due process rights were violated.

Fifth, Jones seeks "[a] copy of the digital CD of the February 12, 2013 Oral Argument of AUSA Marquez, and the direct appeal proceeding of Danny Moore, Appeal No. 11-3056." Jones is not entitled to this evidence as he has not shown how it would change the outcome of his case. Moreover, Jones' ability to quote from the oral arguments suggests that he has already has access to some of the information.

Finally, Jones requests interrogatories from AUSA Marquez and Special Agent King. All of the interrogatories seek information related to Jones' due process claims that are highly speculative and refuted by the bulk of the evidence in the case. Moreover, many of the interrogatories seek privileged information. Jones has not demonstrated how

17

any of the information sought would have a material effect on the outcome of his case. Therefore, the government is not required to produce answers to the interrogatories or requests for documents.

### D. Evidentiary Hearing Standard

An evidentiary hearing on a 28 U.S.C. § 2255 motion is necessary unless the motion, files, and records of the case conclusively show that the movant is not entitled to relief. *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008). A claim under § 2255 may be summarily dismissed without an evidentiary hearing if it is insufficient on its face or the record affirmatively refutes the factual allegations contained in the motion. *Id.* Accordingly, an evidentiary hearing is not required if the allegations in the motion "are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Engelen v. United States*, 68 F.3d 238, 240-41 (8th Cir. 1995).

The Court has reviewed the motion, files, and record, and concludes that all of Jones' claims can be fully and fairly evaluated without an evidentiary hearing. As previously discussed, Jones is not entitled to conduct additional discovery in this matter and therefore there is no need for an evidentiary hearing related to the discovery he seeks.

In his motion to conduct an evidentiary hearing, Jones raises an additional argument contending that discovery and an evidentiary hearing to elicit testimony from his defense attorney are necessary in order for Jones to develop his ineffective assistance of counsel claim. As discussed above, Jones' ineffective assistance of counsel claims raise issues that are clearly insufficient based on the transcripts from the prior criminal proceedings and other evidence presented in the case. Therefore, it is unnecessary for

Jones' attorney to submit an affidavit regarding his trial strategy or appear in an evidentiary hearing.

## III. Certificate of Appealability

The Court will issue a certificate of appealability only if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons discussed above, Jones has not made a substantial showing of the denial of a constitutional right. Therefore, the Court will not issue a certificate of appealability in this case.

## IV. Conclusion

Jones' motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255; motion to conduct discovery; and motion for evidentiary hearing are denied.

/s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: June 22, 2015  
Jefferson City, Missouri